UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Audrey Britton, et al.,                                                          Civil No. 11-93 PJS-MJD-DM

                Plaintiffs,

v.                                                                                             **ORDER ON MOTIONS TO
                                                                                                TO LIFT STAY AND MOTION**
Mark Ritchie, et al.,                                                                **FOR INTERVENTION**

                Defendants.

      This matter is before the Court, Chief Magistrate Judge Arthur J. Boylan, on Plaintiffs' Motion to Lift Stay [Docket No. 32] and Motion to Lift Stay of Proceedings and Intervene by Lori Sellner, et al. [Docket No. 41].  The case concerns legislative and congressional redistricting in Minnesota following the 2010 census.  Hearing was held on June 6, 2011, at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota  55415.  Alan W. Weinblatt, Esq., Jay Benanav, Esq., and Jane L. Prince, Esq. appeared on behalf of the plaintiffs.  Tony P. Trimble, Esq., and Matthew W. Haapoja, Esq. appeared on behalf of previous intervener plaintiffs.  Allan I. Gilbert, Esq., and Mark T. Berhow, Esq., appeared on behalf of the defendant Minnesota Secretary of State.  David L. Lillehaug, Esq., and Marc E. Elias, Esq. appeared on behalf of the applicant plaintiff interveners.  A three-judge panel consisting of the Honorable Diana E. Murphy, United States Circuit Judge for the Eighth Circuit; the Honorable Michael J. Davis, Chief Judge, United States District Court, District of Minnesota; and the Honorable Patrick J. Schiltz, United States District Court Judge, District of Minnesota, has been designated to hear this case.[1]  The present motions have been referred to the magistrate judge for

---

[1] Order of Designation [Docket No. 7].

determination.  The applicant interveners' motion to lift the stay is made for the limited purpose of permitting their intervention. The only opposition to the motion for intervention is made by previous interveners who contend that the motion is untimely and intervention applicants' interests are adequately represented by existing plaintiffs.  Initial plaintiffs do not oppose the intervention but contend that the scope of intervention should be limited to remedies.  Defendant Secretary of State states no position on the intervention motion, but opposes lifting the stay on the grounds the federal court should defer to the Minnesota state court redistricting process and it has not been shown that redistricting plans cannot be adopted in accordance with established government processes.

Based upon the file, declarations, memorandums and arguments of counsel, **IT IS HEREBY ORDERED** that:

1. The Motion to Lift Stay of Proceedings and Intervene by Lori Sellner, et al. is **granted**  [Docket No. 41].  It is the court's determination that intervention is not untimely and is properly permitted as a matter of permissive intervention under Fed. R. Civ. P. 24(b)(1), and that such intervention will not unduly delay or prejudice the adjudication of the original parties' rights.  Timeliness of a motion to intervene is a matter within the district court's discretion, subject to considerations which include: (1) the extent to which the case has progressed; (2) the applicants' knowledge of the litigation; (3) the reason for delay in seeking intervention; (4) and whether the intervention will prejudice existing parties. See American Civil Liberties Union v. Tarek Ibn Ziyad Acad., _ F.3d. _, 2011 WL 2637701 at *3 (8th Cir., July 7, 2011).  The case is presently subject to an indefinite stay of proceedings and a pretrial scheduling order has yet to be issued.  Under these circumstances the court concludes that the motion to intervene is not

untimely and the intervention will not prejudice existing parties.  The scope of the intervention will not be limited to particular issues or remedies.  An appropriate alignment of parties for purposes of conducting motion and trial practice can be established upon lifting the stay and implementation of a litigation scheduling and case management order.

      2. The Motion to Lift Stay by plaintiffs Audrey Britton, et al. is **denied**  [Docket No. 32].

Dated:   July 21, 2011

      s/ Arthur J. Boylan
      Arthur J. Boylan
      United States Chief Magistrate Judge

**MEMORANDUM**

This redistricting matter was stayed by court Order issued on February 7, 2011, and pursuant to agreement of parties.  Plaintiffs now move to have the stay lifted, asserting that census data necessary for legislative and congressional redistricting has become available since the stay was imposed; it is not readily apparent that the matter will be addressed in the near future through Minnesota governmental processes; and lifting the stay and commencement of the judicial process, including possible appeals, is necessary to allow timely consideration and determination of redistricting issues prior to the scheduled dates for political candidate endorsements for elections to be held in November 2012.  Defendants and initial intervener plaintiffs oppose the motion to lift the stay, arguing that federal courts must give deference to state courts on redistricting matters, and plaintiffs have not presented evidence to establish that a

state redistricting panel will be unable to adopt a plan in a timely fashion.

The stay that is currently in effect in the matter does not preclude parties from collecting public data, preparing legal arguments, conferring with experts, and otherwise readying themselves for anticipated legal proceedings.  Indeed, there is no contention that the stay is delaying discovery, and the primary purpose of lifting the stay at this point is to ensure ample time is allowed for court decisions and expected appeals.  Plaintiffs assert that the final determination on redistricting must be made before February 21, 2012, the statutory deadline for adopting constitutional redistricting plans.  Plaintiffs further contend that the federal litigation appropriately provides a standby plan in the event that state redistricting processes fail, and there is no cause for further delay in this action.  The defendant argues that the federal court should defer to parallel state court redistricting proceedings pursuant to the direction of Growe v. Emison, 507 U.S. 25, 32-37 (1993), and that a three-member redistricting panel has been established by Order by Supreme Court Justice Gildea, though actual appointments have not been made in deference to the legislature's role.

Although state and federal courts have concurrent jurisdiction over issues in the reapportionment and redistricting context, principles of comity and federalism typically favor giving deference to either or both legislative and judicial consideration of disputes at the state level.  Emison, 507 U.S. at 32-33, 34 (citing Scott v. Germano, 381 U.S. 407 (1965)).  "[T]he Constitution leaves with the States primary responsibility for apportionment of their federal and state legislative districts."  Emison, 507 U.S. at 34 (citing U.S. Const., Art. I, § 2).  Without showing that the state's legislative or judicial branches will be unwilling or unable to perform its duties in regards to redistricting, the federal court must not obstruct the state's performance or

allow such performance to be impeded by way of federal litigation. Id.  With respect to the timely progression of state efforts, including the pace and time required for orderly appeals, it is recognized that redistricting can be successfully accomplished by the state under highly exigent circumstances and the prospect of appeals is not particularly relevant to the discussion. Id. at 35. Nonetheless, the federal courts are only required to defer to the states, not to abstain from any action, and the federal court is justified in setting deadlines for state legislative and state court action, and establishing its own redistricting plan, in the event that the state branches are unable to timely develop a redistricting plan in time for elections. Id. at 36-37.

In this instance the plaintiffs have simply not shown that proceedings which have been commenced at the state level will be ineffective or will fail to provide timely results. Allowing federal court proceedings to go forward on a parallel track with state litigation and redistricting processes would not necessarily burden the political parties to a great extent because respective arguments and proposed remedies would presumably overlap significantly.  The Minnesota legislature did send a redistricting plan to the legislature which was vetoed by the governor.[2]  The bill and the veto manifest the highly political nature of the redistricting task, a reality which was acknowledged in Emison, 507 U.S. at 33.  However, the actions also indicate that the legislature and the governor are cognizant of redistricting duties in general, and it is premature to conclude that those duties will not be timely performed.  Likewise, the judicial branch has taken the initial step of establishing a three-member redistricting panel.  Finally, the federal three-judge panel has been designated to hear the present case.  It is apparent that each of the institutions that may be called upon to consider reapportionment and redistricting in

---

[2] Declaration of Tony P. Trimble, Ex. B.

Minnesota is currently poised for the challenge and plaintiffs' request to lift the stay is based substantially upon a largely speculative time line rather than concrete evidence of the state's inability or unwillingness to act on the matter. Of course, the passage of time itself may alter the analysis, but for the present, it has simply not been shown that a complete breakdown of the state reapportionment and redistricting process has occurred or is imminent and the stay should therefore remain in effect, and the state legislative and judicial processes should be allowed to proceed without the interference of federal litigation. The court does not conclude that the stay in this case can never be lifted so long as some nominal state level activity is occurring, but the necessity for federal court intervention in Minnesota redistricting has not yet come to fruition.